## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

_____

GREGORY SAIN,

                 Plaintiff,

v.                            **MEMORANDUM OF LAW & ORDER**

                            Civil File No. 07-4203 (MJD/AJB)

JAMES A. GESKE, et al.,

                  Defendants.

_____

Gregory Sain, pro se.

Eric D. Cook and Christina M. Weber, Wilford & Geske, PA, for Defendants James A. Geske, Curt Forte, Countrywide Home Loans, Inc., and Wells Fargo Bank, N.A.

William J. Everett, Everett Law, LLC, for Defendants Gary L. Miller, Jim Koenig, and Paul Burke.

_____

## I.    INTRODUCTION

This matter is before the Court on the Motion to Dismiss by Defendants Wells Fargo Bank, N.A., James A. Geske, Curt Forte, and Countrywide Home Loans, Inc. [Docket No. 22] and on the Motion to Dismiss Pursuant to Rules 12(b)(6) and 56 by Defendants Gary L. Miller, Jim Koenig, and Paul Burke [Docket No. 28].  The Court heard oral argument on April 11, 2008.

## II.      BACKGROUND

### A.      Factual Background

On March 24, 2005, Plaintiff Gregory Sain executed and delivered a promissory note in the original principal amount of $342,000.00 ("Note") to Argent Mortgage Company, LLC ("Argent").  (Compl. at 4; Adjustable Rate Note, Kazarian Aff., Ex. 1.)  Simultaneously, Sain and his wife, Kristina Guy, executed and delivered a mortgage ("Mortgage") to Argent.  (Compl. at 4; Mortgage, Kazarian Aff., Ex. 2.)  The Mortgage secured property commonly known as 5047 53rd Street SW, Waverly, Minnesota, and legally described as Lots 5 and 6, Poplar Heights, Wright County, Minnesota ("Property").  (Mortgage.) The Mortgage was recorded in the office of the Wright County Recorder on April 21, 2005.  (Compl. at 4; Kazarian Aff. ¶ 2.)

On March 29, 2005, the Mortgage was assigned to Defendant Wells Fargo Bank, N.A. ("Wells Fargo").  (Compl. at 4; Assignment, Kazarian Aff., Ex. 3.) The assignment of the Mortgage was recorded in the office of the Wright County Recorder on August 21, 2006.  (Kazarian Aff. ¶ 3.)  Defendant Countrywide Home Loans, Inc. ("Countrywide") began servicing the loan on or about this date.  (Compl. at 4; Kazarian Aff. ¶ 4.)

2

Sain and Guy defaulted under the terms of the Note and Mortgage by failing to make their monthly payments.  (Kazarian Aff. ¶ 5.)  Countrywide, as servicer for Wells Fargo, referred the loan to the law firm of Wilford & Geske, P.A., to foreclose the Mortgage, as evidenced by the Notice of Pendency of Proceeding and Power of Attorney to Foreclose Mortgage, dated August 10, 2006, and recorded in the office of the Wright County Recorder on August 21, 2006.  (Compl. at 4; Kazarian Aff. ¶ 6; Notice of Pendency, Kazarian Aff. Ex. 4.)  Defendant James A. Geske is a partner in Wilford & Geske.  (Compl. at 4.)

Wells Fargo published a legal notice of foreclosure and a notice of sheriff's sale in a local newspaper.  (Compl. at 4.)  The notice was published for six consecutive weeks, starting on August 24, 2006.  (Everett Aff., Ex. A(2); Weber Aff., Ex. 1 at 5.)

The Notice of Mortgage Foreclosure Sale, Homestead Designation Notice, Fair Debt Collection Practices Act Notice, and Help for Homeowners in Foreclosure Notice were served on the Property's occupants by leaving two copies with Sain on September 6, 2006.  (Weber Aff., Ex. 1, at 7.)

Pursuant to Minnesota Statute § 580.06, a sheriff's sale was held on October 12, 2006.  (Compl. at 4-5; Koenig Aff. ¶ 7; Weber Aff., Ex. 1, at 3.)  Defendant Jim

3

Koenig, a Wright County Deputy Sheriff, conducted the sale. (Compl. at 4; Koenig Aff. ¶ 7.)

Wells Fargo purchased the property with a bid of $376,946.43, subject to the six-month redemption period provided under Minnesota Statute § 580.23, subd. 1. (Compl. at 4-5; Koenig Aff. ¶ 8; Weber Aff., Ex. 1, at 3.) After the redemption period expired on April 12, 2007, with no redemption made, Wells Fargo became the owner of the Property.

According to Sain, on April 25, 2007, Defendant Curt Forte, a realtor, left a note on the door of the Property stating that he had been authorized by Countrywide to offer Sain $1,800.00 to vacate the Property by May 9, 2007. (Compl. at 5.)

On June 13, 2007, Wells Fargo filed an Eviction Complaint against Sain and his wife in Wright County District Court. On June 23, 2007, Plaintiff was served with an eviction summons, which stated that the eviction hearing was set for July 3, 2007. (Compl. at 5; Everett Aff., Ex. B; Weber Aff., Ex. 3.) The eviction hearing was held on July 3, 2007, and Sain attended that hearing. (Compl. at 5; Everett Aff., Ex. C.) Sain alleges that the state court ignored his arguments and that he was "railroaded through the state court hearing." (Compl. at 5.) On July 9, 2007,

4

the Wright County District Court entered judgment against Sain and ordered him to vacate the property by July 11, 2007.  (Compl. at 5; Everett Aff., Ex. C.)   On July 25, 2007, the court issued a Writ of Recovery commanding the Wright County sheriff to remove Sain and Guy from the premises and return the premises to Wells Fargo.  (Everett Aff., Ex. D.)

The time for appeal of the Wright County court order has passed and there is no evidence of a successful appeal or an appellate decision.

On July 25, 2007, Defendant Gary Miller, the Sheriff of Wright County, received the Writ of Recovery of Premises from the court.  (Miller Aff. ¶ 10.)  A deputy posted the writ on the Property, giving Plaintiff twenty-four hours to vacate.  (Compl. at 5; Everett Aff., Ex. E.)

The Wright County Sheriff's Office took no action for approximately three weeks.  Sain remained in possession of the property until August 17, 2007.  (Compl. at 6; Weber Aff. ¶ 8.)  On that date, personnel from the Sheriff's Office executed the eviction order.  (Compl. at 6; Miller Aff. ¶ 14; Koenig Aff. ¶ 12; Chaney Aff. ¶ 4.)  During the eviction, Sain was asked if he wanted to retrieve any of his property.  (Compl. at 6; Koenig Aff. ¶ 13.)  Sain took his pets, but left all of his other property.  (Compl. at 6; Koenig Aff. ¶ 13.)  Koenig avers that the

officers did not use any violence during the eviction, and no locks or doors were broken.  (Koenig Aff. ¶ 12.)  In his Complaint, Sain alleges that he "left his home by force," but he does not allege any physical force, and the Court interprets this statement to mean that he left against his will.  (Compl. at 6.)  Koenig told Sain he was not allowed onto the property and that he would be charged with trespassing if he returned without authorization.  (Koenig Aff. ¶ 14.)  Deputies placed a no -trespass order on the front door of the property before leaving. (Koenig Aff. ¶ 15; Koenig Aff., Ex. B.)

Sain states that he returned to the Property after the eviction was completed and that, each time, he has received a trespassing citation, once from a deputy named "Eric."  (Compl. at 7.)  He asserts that Eric placed him in handcuffs, then released him, but impounded his truck and garage door openers. (Id.)  Sain further alleges that he received a threatening call from Defendant Deputy Sheriff Paul Burke.  (Id.)  Burke also mailed him a ticket for trespass. (Id.)

According to Defendants, on August 23, 2007, Deputy Aric Chaney was dispatched to a call of a "burglary in progress" at the Property.  (Chaney Aff. ¶ 2.)  Dispatch told him that Sain was in the residence although he had been

evicted on August 17.  (<u>Id.</u> ¶ 3.)  As Chaney neared the property, he saw Sain

driving away in the opposite direction.  (<u>Id.</u> ¶ 6.)  Chaney recognized Sain

because Chaney had assisted in the eviction a week earlier.  (<u>Id.</u>)  He knew that a

shotgun was removed from Sain's house during the eviction.  (<u>Id.</u> ¶ 4.)  Chaney

was also aware of an "officer safety alert" put out by the Wright County Sheriff's

Office indicating Plaintiff was potentially dangerous.  (<u>Id.</u> ¶ 5; Chaney Aff, Ex.

A.)

　　　　Chaney avers that there were no license plates or temporary permits on the

vehicle Sain was driving.  (Chaney Aff. ¶ 7.)  Chaney stopped the vehicle.  (<u>Id.</u>

¶ 8.)  During the stop, Sain told Chaney that he had taken off his license plates

because he was a sovereign nation.  (<u>Id.</u> ¶ 10.)  When Chaney asked for proof of

insurance, Sain stated that he did not carry insurance on the vehicle.  (<u>Id.</u> ¶ 11.)

　　　　Chaney asked Sain to step out of his vehicle.  (Chaney Aff. ¶ 15.)  He

patted down Sain's outer clothing, placed him in handcuffs, and detained him in

the back of his squad car as he continued his investigation.  (<u>Id.</u> ¶¶ 16-17.)

Chaney confirmed with another officer that witnesses had seen Sain at the

Property.  (<u>Id.</u> ¶ 18.)  Chaney issued Sain a citation for misdemeanor trespass,

misdemeanor no insurance, and failure to display license plates.  (<u>Id.</u> ¶ 19.)  He

released Sain after the citation was issued.  (<u>Id.</u> ¶ 23.)

In Sain's unsworn Opposition, without citation to any evidence in the record, Chaney stopped Sain's car to check for vehicle registration and then demanded to see Sain's identification.  Sain also asserts that Chaney patted him down, put him in handcuffs, and detained him in the back of the squad car while he investigated, compelling Sain to remain where he did not wish to be.  He claims that Chaney then issued him a citation and towed his car.

Chaney impounded the vehicle pursuant to the Wright County Sheriff's policy on towing and impoundment.  (Chaney Aff. ¶ 20.)  The policy authorizes officers to impound uninsured vehicles if the deputy issues a citation for failing to provide insurance and also requires that all impounded vehicles be inventoried.  (<u>Id.</u>; Miller Aff. ¶¶ 7-9; Miller Aff., Ex. B.)  Chaney conducted an inventory search and discovered two garage door openers.  (Compl. at 7-8; Chaney Aff. ¶ 21.)  On the grounds that there was evidence that Plaintiff had trespassed inside the house on the Property and these openers enabled Plaintiff to enter into the home from which he had been evicted, Chaney seized the door openers as evidence.  (Chaney Aff. ¶ 22.)

In September 2007, Wells Fargo and Countrywide learned that Sain and his

wife had moved back into the property.  (Weber Aff. ¶ 9.)  They called the sheriff.
(Id.)

On September 13, 2007, the Sheriff's Office was again notified that Sain had
unlawfully trespassed on the Property.  (Burke Aff. ¶ 5.)  Burke was assigned to
investigate the complaint.  Burke's preliminary investigation showed that Sain's
former neighbor had seen Sain mowing the grass at the Property on September
12, 2007.  (Id. ¶¶ 6-10.)  Burke called Sain on his phone and left a message to call
him back.  (Id. ¶ 11.)

Sain called Burke later that day.  (Burke Aff. ¶ 12.)  Sain admitted that he
had been on the Property the day before.  (Id. ¶ 13.)  Burke told Sain he would be
issuing him a citation for trespassing and asked Sain for his address.  (Id. ¶ 15.)
Sain gave Burke the address of the Property.  (Id.) Burke told Sain that he no
longer lived there.  (Id. ¶ 16.)  Sain stated that the Sheriff's Office had no control
over him.  (Id.)  Burke ended the conversation and mailed a citation to the
address Sain provided at the Property.  (Id. at ¶ 17.)  Burke did not detain or
arrest Sain; their only contact was by phone.  (Id. ¶ 18.)

In Sain's unsworn Opposition, he alleges that he did receive a phone call
from Burke on September 13, 2007, telling him that he was being mailed a

trespass citation, despite the fact that Sain attempted to explain his reasons for

being on the Property.

### B.      Procedural Background

On October 10, 2007, Sain filed a Complaint against Geske, Forte, Miller,

Koenig, Burke, Countrywide, Wells Fargo, and John Does 1-10.  The Complaint

alleges seven counts:

> FIRST CAUSE OF ACTION: Deprivation of U.S. Const. Amend. 4
> right resulting from JOHN DOE No. 1 arresting Plaintiff absent
> warrant or probable cause.

> SECOND CAUSE OF ACTION: Deprivation of U.S. Const. Amend. 4
> right to be secure in Plaintiff's home and other effects by
> government agents, Defendants Gary L. Miller, Paul Burke, and Jim
> Koenig.

> THIRD CAUSE OF ACTION: Deprivation of U.S. Const. Amend. 5
> right not be deprived of property without due process of law by
> Defendants Country Wide, Wells Fargo Bank, James A. Geske, Curt
> Forte, in cahoots with government agents Defendants Paul Burke,
> Gary L. Miller, and Jim Koenig.

> FOURTH CAUSE OF ACTION: Deprivation of U.S. Const. Amend. 5
> right resulting from Defendant JOHN DOE No. 1 impounding
> Plaintiff's truck and taking garage door openers without due process
> of law.

> FIFTH CAUSE OF ACTION: FRAUD committed against Plaintiff by
> Defendants Country Wide, Wells Fargo Bank, James A. Geske, Curt
> Forte, Paul Burke, Gary L. Miller, and Jim Koenig.

SIXTH CAUSE OF ACTION: Malicious Prosecution against Plaintiff
by Defendants Country Wide, Wells Fargo Bank, James A. Geske,
Curt Forte, Jim Koenig, and Gary L. Miller.

SEVENTH CAUSE OF ACTION: False arrest and imprisonment of
Plaintiff  by Defendant JOHN DOE No. 1 constituting deprivation of
U.S. Amend. 4 right.

(Compl. at 7-8.)

Sain seeks compensatory damages of $500,000; punitive damages of

$25,000; declaratory judgment; injunctive relief; and costs.

On October 12, 2007, Sain filed a motion for an injunction to obtain

possession of the Property.  On October 16, 2007, the Court denied that motion.

[Docket No. 8]

Geske, Forte, Wells Fargo and Countrywide ("the Private Defendants") ask

that all claims against them be dismissed based on failure to state a claim upon

which relief can be granted.  Sain asserts three causes of action against the Private

Defendants: Count Three, alleging deprivation of property without due process

of the law, in violation of the Fifth Amendment; Count Five, fraud; and Count

Six, malicious prosecution.

Miller, Koenig, and Burke ("the Government Defendants") assert that this

matter must be dismissed because the Court lacks personal jurisdiction over

11

them due to improper service.  Additionally, they request that the Court address the merits of Sain's claims against them to find that he fails to state a claim upon which relief can be granted.  In the alternative, they ask that the Court grant summary judgment for them on all claims against them.  They ask that the Court exercise its supplemental jurisdiction to also dismiss the state law claims – fraud and malicious prosecution – with prejudice.

## III.   DISCUSSION

### A.   Introduction

#### 1.   Motion to Dismiss Standard

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move the Court to dismiss a claim if, on the pleadings, a party has failed to state a claim upon which relief may be granted.

> [T]he district court's grant of a motion to dismiss [is reviewed] *de novo*.  Dismissal is proper where the plaintiffs' complaint fails to state a claim upon which relief can be granted.  At this stage of the litigation, we accept as true all of the factual allegations contained in the complaint, and review the complaint to determine whether its allegations show that the pleader is entitled to relief.  The plaintiffs need not provide specific facts in support of their allegations, but they must include sufficient factual information to provide the "grounds" on which the claim rests, and to raise a right to relief above a speculative level.

Schaaf v. Residential Funding Corp., 517 F.3d 544, 549 (8th Cir. 2008) (citations

omitted).  "A motion to dismiss should be granted if it appears beyond doubt

that the plaintiff can prove no set of facts which would entitle him to relief. "

Students for Sensible Drug Policy Found. v. Spellings, 523 F.3d 896, 899 (8th Cir.

2008) (citation omitted).

When deciding a motion to dismiss the Court considers "the complaint,

matters of public record, orders, materials embraced by the complaint, and

exhibits attached to the complaint."  PureChoice, Inc. v. Macke, No. 07-1290

(DWF/SRN), 2007 WL 2023568, at *5 (D. Minn. July 10, 2007) (unpublished)

(citing Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th. Cir. 1999)).

In this case, the Court considers the matters of public record, such as the

Wright County court order, and documents mentioned in or embraced by the

Complaint, and whose contents Sain does not dispute, such as the Note,

Mortgage, Summons and Complaint for the eviction action, and documents

related to the foreclosure.

## 2.       Summary Judgment Standard

Summary judgment is appropriate if, viewing all facts in the light most

favorable to the non-moving party, there is no genuine issue as to any material

13

fact, and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ.

P. 56(c); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986).  The party seeking

summary judgment bears the burden of showing that there is no disputed issue

of material fact.  <u>Celotex</u>, 477 U.S. at 323.  Summary judgment is only appropriate

when "there is no dispute of fact and where there exists only one conclusion."

<u>Crawford v. Runyon</u>, 37 F.3d 1338, 1341 (8th Cir. 1994) (citation omitted).

### B.    Personal Jurisdiction

The Government Defendants claim that the Court lacks personal

jurisdiction over them because they have not been properly served.  Sain has filed

proof of service on the three Government Defendants stating that a process server

served the Defendant by leaving the Summons and Complaint with reception at

the Government Defendants' workplace.  [Docket No. 2]

While the plaintiff eventually bears the burden to establish personal

jurisdiction by preponderance of the evidence, when personal jurisdiction is

decided based upon affidavits, prior to an evidentiary hearing, the plaintiff need

only establish a prima facie showing of personal jurisdiction.  <u>Dakota Indus., Inc.</u>

<u>v. Dakota Sportswear, Inc.</u>, 946 F.2d 1384, 1387 (8th Cir. 1991).  "[T]he court must

look at the facts in the light most favorable to the nonmoving party, and resolve

all factual conflicts in favor of that party." Id. (citations omitted).

If the plaintiff fails to provide sufficient service of process, the Court does not have jurisdiction over the defendants.  Printed Media Servs., Inc. v. Solna Web, Inc., 11 F.3d 838, 843 (8th Cir. 1993) (merely mailing a copy of complaint does not establish personal jurisdiction).  There are three ways to serve an individual defendant: 1) pursuant to the law of the state in which the district court is located or the service is made, 2) by personal service to the individual, the individual's dwelling, or the authorized agent, or 3) waiver.  Fed. R. Civ. P. 4(d), (e).

Here, none of the Government Defendants have been personally served with a copy of the summons and complaint on their individual, at their dwelling, or with their authorized agent; none of them were provided with a notice of acknowledgment or in any way acknowledged service; and none of them waived service.  They each received a copy of the Summons and Complaint at the Sheriff's Office; however, Sain is suing all three in their individual capacities only.

Leaving the summons and complaint with the receptionist at an individual defendant's place of work is not effective service under Minnesota law.  Thiele v.

15

Stich, 425 N.W.2d 580, 584 (Minn. 1988).  See also Marshall v. Warwick, 155 F.3d

1027, 1030 (8th Cir. 1998) (applying South Dakota law).

Because the Court lacks personal jurisdiction over the Government

Defendants, it could dismiss the case against them without prejudice.  However,

the Government Defendants seek to have the Court still address the merits of the

Complaint and dismiss the case with prejudice.

The Government Defendants argue that they have expended substantial

resources defending this lawsuit.  They responded to a motion for injunctive

relief, answered the Complaint, and fully briefed their motion to dismiss.  They

ask that they not be required to do so again if Sain, in the future, properly serves

a complaint.  The Government Defendants request that the Court dismiss Sain's

Complaint with prejudice for failure to state a claim upon which relief can be

granted or, in the alternative, grant summary judgment to Defendants.  The

Court interprets the Government Defendants' position to be that they waive their

personal jurisdiction objection so that the Court has the jurisdiction to address

the merits of the case against them.

A court lacking in personam jurisdiction has no jurisdiction to issue

judgment; "[t]hus, courts should ordinarily satisfy jurisdictional concerns before

addressing the merits of a civil action." <u>Feinstein v. Resolution Trust Corp.</u>, 942

F.2d 34, 40 (1st Cir. 1991).  Courts have made an exception to this requirement

when the defendant waives the defense or when the defendant wishes to have

the court address the merits and the personal jurisdiction issue is difficult.  <u>Id.</u>

Although the Government Defendants have correctly noted that they have not

been effectively served in this case, at their request, the Court will address the

case against them on the merits.

C.    **Fraud**

1.    **Count Five: Fraud Allegations**

In the fact section of his Complaint, Sain's mention of fraud is as follows:

> **April 25, 2007:** Realtor, Defendant, **<u>Curt Forte</u>**, leaves a note on
> Plaintiff's door, after going to neighbors and telling them Plaintiff
> hasn't been paying the mortgage and is being foreclosed on.  The
> note read[s] as follows: "Mr. Sain, I have been authorized by
> Countrywide Home Loans to offer you $1800.00 to vacate the above
> property by May 9, 2007.  Please contact me at 763-682-8901 [o]r 612-
> 202-5727.  I look forward to hearing from you."

> * * *

> This same realtor, Defendant, **<u>Curt Forte</u>**, was brought into
> this fraud by either Defendants, **<u>Geske</u>**, or **<u>Countrywide</u>**, four
> months ago with the letter he brought to my home offering me
> $1,800 to move out.  He stated, and I quote: "I'm out of this affair . . .
> I just sent the letter to you a couple days ago to give you a heads up

17

> as to what they were going to do."  He was frazzled and forgot that
> the letter he sent said that Defendant, **<u>Wells Fargo Bank</u>**, was
> authorized to remove me, and he had just 2 minutes earlier stated
> that, "This is out of my hands now . . . you need to contact
> Countrywide or the realtor about your house.  Want their numbers?"

(Compl. at 5-7.)   Then the entire fraud count reads as follows: **"FIFTH CAUSE**

**OF ACTION:** FRAUD committed against Plaintiff by Defendants Country Wide,

Wells Fargo Bank, James A. Geske, Curt Forte, Paul Burke, Gary Miller, and Jim

Koenig."  (<u>Id.</u> at 8.)

### 2.    Standard

The general motion to dismiss standard was set forth previously.

Additionally, claims of fraud must be pled with particularity.  Federal Rule of

Civil Procedure 9(b) provides that "[i]n alleging fraud or mistake, a party must

state with particularity the circumstances constituting fraud or mistake.  Malice,

intent, knowledge, and other conditions of a person's mind may be alleged

generally." "'[C]ircumstances' include such matters as the time, place and

contents of false representations, as well as the identity of the person making the

misrepresentation and what was obtained or given up thereby. . . .  [C]onclusory

allegations that a defendant's conduct was fraudulent and deceptive are not

sufficient to satisfy the rule."  <u>Parnes v. Gateway 2000, Inc.</u>, 122 F.3d 539, 549 (8th

18

Cir. 1997) (citation omitted).

> To establish a claim for fraud, a plaintiff must prove:
>
> [T]hat [the] defendant (1) made a representation (2) that was false (3) having to do with a past or present fact (4) that is material (5) and susceptible of knowledge (6) that the representor knows to be false or is asserted without knowing whether the fact is true or false (7) with the intent to induce the other person to act (8) and the person in fact is induced to act (9) in reliance on the representation [and] (10) that the plaintiff suffered damages (11) attributable to the misrepresentation.

Heidbreder v. Carton, 645 N.W.2d 355, 367 (Minn. 2002) (citations omitted).

### 3.     Failure to Plead Fraud with Particularity

As to all Defendants, Sain has failed to plead fraud with particularity.  It is not clear which representation Sain asserts is fraudulent.  He does not particularly allege fraud with regard to any statement in his Complaint.  Even assuming Sain asserts that Forte's April 25, 2007, note is the fraudulent representation, Sain offers no allegations against the other Defendants.  As to Forte, Sain does not allege what Forte obtained by writing the note, that the note was false, or that Sain relied on the note.

### 4.     Failure to State a Claim

All Defendants also assert that there is no set of circumstances under

19

which Sain could prevail on his claim.  They argue that the foreclosure-related documents cannot possible be fraudulent because they are the standard form notices required by Minnesota law and are based on the undisputed monetary defaults under the Note and Mortgage.  The Private Defendants assert that when Sain and his wife stopped making payments on the Mortgage, all subsequent documents related to the mortgage foreclosure were a direct reflection of their defaults and the terms of the clear and unambiguous real estate documents on file for years with the Wright County Recorder.  The Government Defendants note that the Complaint makes no mention that Miller, Koenig, or Burke made any representations to Sain at all, let alone representations that were false, material, or induced him to act in any way.

In his Opposition, Sain asserts that he had discovered fraud "pertaining to the loan" and that he had challenged Countrywide and Wells Fargo "to prove the legitimacy of the loan." (Opp.  [Docket No. 41] at 3.)  He then alleges a system-wide fraud in the consumer credit industry in which banks loan consumers their own money.  He asserts that the entire mortgage system is illusory because the bank simply lends the consumer a debt.

With regard to Forte, Sain has failed to plead fraud with specificity.  His

Complaint only vaguely mentions fraud with relation to Defendant Forte.  With

regard to Forte, he does provide a verbal quotation and also references a letter

that Forte gave him offering him $1,800 to move out of his house.  However, the

Complaint does not explain if or how either of those representations were false.

Sain's response does not clarify his fraud claims or make any allegation that is

specific to the defendants in this case.  Additionally, his response does not make

sense and, even if his entire argument were included in his Compliant, he would

still fail to state a claim for fraud.  Therefore, the Court dismisses the fraud claim

against Forte with prejudice for failure to state a claim on which relief can be

granted.

With regard to the other Defendants, not only does Sain fail to meet Rule

9(b), he also fails to state a claim against them at all because he does not mention

any fraud that they committed.  He does not mention any particular

representations, let alone false representations, by the Government Defendants or

the other Private Defendants.  The explanation in his Opposition does not state a

viable fraud claim.  The fraud claim is dismissed against all Defendants for

failure to state a claim on which relief can be granted.

### D.    Count Six: Malicious Prosecution

### 1.      Standard

Under Minnesota law, the tort of malicious prosecution
consists of three elements.  First, the underlying lawsuit must have
been brought without probable cause.  Second, the action must have
been instituted with malicious intent.  Third, the action must have
terminated in the defendant's favor.  Probable cause to initiate civil
proceedings requires only a reasonable belief that the claim will
ultimately prevail, or such facts and circumstances as will warrant a
cautious, reasonable and prudent person in the honest belief that his
action and the means taken in prosecution of it are just, legal, and
proper.

Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999) (citations

omitted).  With regard to the Government Defendants, "[t]o prevail on his

malicious prosecution claim, [Sain] must establish that 1) the officers had no

probable cause to arrest him and 2) they acted with actual malice.  Allen v. Osco

Drug, Inc., 265 N.W.2d 639, 642 (Minn. 1978)."  Williams v. City of Minneapolis,

No. CX-91-1474, 1992 WL 72002, at *2 (Minn. Ct. App. Apr. 14, 1992)

(unpublished).

### 2.      Claim Against the Private Defendants

#### a.      Foreclosure Process

The Private Defendants first argue that the non-judicial foreclosure cannot

support a claim for malicious prosecution because there is no underlying lawsuit.

Wells Fargo did not commence a lawsuit in order to foreclose on the Property, but, instead, proceeded through foreclosure by advertisement under Minnesota Statute Chapter 580.

Because the foreclosure was accomplished without a lawsuit, Sain fails to state a claim for malicious prosecution based on Defendants' actions related to the foreclosure. Additionally, the foreclosure and subsequent eviction proceedings did not terminate in Sain's favor, so his malicious prosecution claim cannot survive.

### b.    Eviction Proceedings

The Private Defendants assert that the eviction was also based upon a reasonable belief that Wells Fargo was entitled to possession of the Property. The foreclosure sale occurred on October 12, 2006. The redemption period expired on April 12, 2007, and neither Sain nor his wife made any redemption during that period. At that time, Wells Fargo became the lawful owner of the Property. Minn. Stat. § 580.12.

Because the underlying eviction action did not end in Sain's favor, he does not state a claim for malicious prosecution. This claim against the Private Defendants is dismissed for failure to state a claim.

23

### 3.    Claim Against the Government Defendants

Sain's malicious prosecution claim against the Government Defendants appears to be based on the trespass citations.  To the extent it is based on the foreclosure and eviction proceedings, the claim fails because those proceedings did not terminate in Sain's favor.

The Government Defendants assert that they had probable cause to charge Sain because, as he admits, he was evicted and, as he also admits, he returned to the Property.  "To establish probable cause, the police must show that they reasonably could have believed that a crime has been committed by the person to be arrested."  State v. Riley, 568 N.W.2d 518, 523 (Minn. 1997) (citation omitted).  Also, Sain does not make any allegation indicative of malice.

Sain asserts that he has not yet been convicted of trespass based on the August 23, 2007 incident, therefore he objects that the trespass is merely alleged. He further asserts that Burke committed malicious prosecution by mailing the trespass citation to Sain on September 13, 2007 after Sain explained "the facts and legal reasons" to him.  (Opp. [Docket No. 40] at 5.)

Sain fails to state a claim because, based on his own Complaint, he was evicted, yet returned to the Property in violation of the court order.  This

provided probable cause for the trespass citations.  Moreover, in the alternative,

the Government Defendants are entitled to summary judgment on this claim

because based on the unrefuted affidavits submitted in conjunction with their

motion, they had probable cause to arrest him and they did not act with malice.

### E.   Constitutional Claims

#### 1.   Introduction

Sain alleges violations of his Fourth and Fifth Amendment rights under the

U.S. Constitution in a variety of counts.  The Court addresses each alleged

incident to determine if Sain states a claim for violation of his constitutional

rights and if Defendants are entitled to summary judgment to the extent a claim

is based on that incident.

##### a.   Section 1983 Standard

When bringing a section 1983 claim a plaintiff must establish (1) that he

was deprived of a right secured by the Constitution or laws of the United States

and (2) that the deprivation was committed under color of state law.  Lugar v.

Edmondson Oil Co., 457 U.S. 922, 931 (1982).  Section 1983 "is not itself a source

of substantive rights, but merely provides a method for vindicating federal rights

elsewhere conferred."  Graham v. Connor, 490 U.S. 386, 393-94 (1989) (citation

omitted).

"Private misuse of a statute by a private actor is not sufficient to state a claim under section 1983." Hassett v. Lemay Bank & Trust Co., 851 F.2d 1127, 1129 (8th Cir. 1988) (citation omitted).  Also, "allegations[] that a private party acted unlawfully with respect to a constitutional state statute[] fail to state a claim for relief." Id. at 1130 (citations omitted).

> In Lugar v. Edmondson Oil Co., the Supreme Court held that in a section 1983 case where a private party defendant performs an act ordinarily performed by private parties and it triggers action by state officials, the defendant's actions are committed 'under color of' state law if the conduct qualifies as state action under the fourteenth amendment.  The issue thus hinges on whether the defendant's conduct allegedly causing the deprivation of a federal right [is] fairly attributable to the State.
>
> This fair attribution test has two components: a state policy and a state actor.  The state policy component requires that the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible.  A state policy may be inferred from either a state statute, or a well-settled custom or practice.  The state actor component requires that the defendant must be a person who may fairly be said to be a state actor.  This may be because he is a state official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State.

Roudybush v. Zabel, 813 F.2d 173, 176-77 (8th Cir. 1987) (citations omitted).

With regard to the state actor element,

> [t]he second element requires more than the private misuse of a state statute (as alleged in the taking of the personal property in this case); a plaintiff must show that the private party acted in concert with or obtained significant aid from state officials who were themselves involved in a constitutional violation.  Otherwise stated, there must be a 'meeting of the minds' or a 'mutual understanding' between a private party and public officials to engage in conduct that violates the plaintiff's federal rights.

Audio Odyssey, Ltd. v. Brenton First Nat'l Bank, 245 F.3d 721, 740 (8th Cir. 2001)

(citations omitted), opinion reinstated by 286 F.3d 498 (8th Cir. 2002) (en banc).

## b.    Qualified Immunity

"Whether a given set of facts entitles the official to summary judgment on

qualified immunity grounds is a question of law.  But if there is a genuine

dispute concerning predicate facts material to the qualified immunity issue, there

can be no summary judgment."  Greiner v. City of Champlin, 27 F.3d 1346, 1352

(8th Cir. 1994) (citations omitted).  If the plaintiff alleges actions that a reasonable

officer could have believed lawful, then the Court should grant summary

judgment based on qualified immunity before discovery occurs.  Anderson v.

Creighton, 483 U.S. 635, 646 n.6 (1987).

"The purpose of qualified immunity is to allow public officers to carry out

27

their duties as they believe are correct and consistent with good public policy,

rather than acting out of fear for their own personal financial well being." Sparr

v. Ward, 306 F.3d 589, 593 (8th Cir. 2002) (citation omitted).  "Qualified immunity

protects a government official from liability in a section 1983 action unless the

official's conduct violated a clearly established constitutional or statutory right of

which a reasonable person would have known."  Henderson v. Munn, 439 F.3d

497, 501 (8th Cir. 2006) (citations omitted).

The Court performs a two-step inquiry to determine whether officers are

entitled to qualified immunity:

> (1) whether, after viewing the facts in the light most favorable to the
> party asserting the injury, there was a deprivation of a constitutional
> or statutory right; and, if so, (2) whether the right was clearly
> established at the time of the deprivation such that a reasonable
> official would understand his conduct was unlawful in the situation
> he confronted.

Henderson, 439 F.3d at 501-02 (citations omitted).

> For a constitutional right to be clearly established, its contours must
> be sufficiently clear that a reasonable official would understand that
> what he is doing violates that right.  This is not to say that an official
> action is protected by qualified immunity unless the very action in
> question has previously been held unlawful, but it is to say that in
> the light of pre-existing law the unlawfulness must be apparent.

Hope v. Pelzer, 536 U.S. 730, 739 (2002) (citations omitted).

2.      **Deprivation of Property Without Due Process: Foreclosure**

a.      **Standard**

With regard to the underlying due process constitutional violation alleged,

state action is required:

> The Due Process Clause of the Fifth Amendment to the United
> States Constitution provides that: "No person shall . . . be deprived
> of . . . property, without due process of law; . . . "  It applies to
> federal government not private action, while the fourteenth
> amendment due process clause applies to the states.  The standard
> for finding federal government action under the fifth amendment is
> the same as that for finding state action under the fourteenth
> amendment.  That standard is that there must exist "a sufficiently
> close nexus between the (government) and the challenged action of
> the regulated entity so that the action of the latter may be fairly
> treated as that of the (government) itself."

Warren v. Gov't Nat'l Mortgage Ass'n, 611 F.2d 1229, 1232 (8th Cir. 1980)

(citations omitted).  Similarly, under the Fourteenth Amendment or the

Minnesota Constitution, procedural due process violations do not apply to

private actions – state action is required.  See, e.g., Zhang v. Equity Office Props.

Trust, No. 06-2265 MJD/AJB, 2007 WL 26324, at *8 (D. Minn. Jan. 3, 2007) (Davis,

J.) (unpublished) ("[T]he due process protections of the Fourteenth Amendment

do not extend to private conduct by private individuals.") (citing Jackson v.

Metro. Edison Co., 419 U.S. 345, 349 (1974)); Sartori v. Harnischfeger Corp., 432

N.W.2d 448, 453 (Minn. 1988) ("The due process protection provided under the Minnesota Constitution is identical to the due process guaranteed under the Constitution of the United States.") (citation omitted).

### b. Absence of State Action by the Private Defendants

The Private Defendants assert that Sain cannot show the presence of a state action in the foreclosure conducted by Wells Fargo and Countrywide through their agents, Geske and Forte; nor has Sain alleged any facts showing the presence of a state action. Wells Fargo and Countrywide are both private corporations and Geske and Forte are employed by Wells Fargo and Countrywide, not by the government. There is no allegation that would support a claim that they were acting under color of state or federal law at any time throughout the foreclosure process.

The most that Sain alleges is that the Private Defendants were "in cahoots" with the Government Defendants. This is insufficient to state a claim.

### c. Foreclosure Process

The Government Defendants also note that Minnesota courts have held that Minnesota Statute § 580.03 does not violate a mortgagor's due process rights if the foreclosure action is conducted in accordance with the chapter. <u>See</u>

Guidarelli v. Lazaretti, 233 N.W.2d 890, 892 (Minn. 1975) (holding that statutory procedure for mortgage foreclosure by advertisement did not violate procedural due process).

The Private Defendants note that Minnesota Statute § 580.03 requires that the mortgagee publish notice of the foreclosure for six consecutive weeks and that notice be personally served on any occupants living on the property.  In this case, both requirements were met.  Additionally, Sain had actual notice of the foreclosure sale because a private process server served two copies of the Notice of Mortgage Foreclosure Sale and other relevant documents on Sain.  Sain does not allege that the foreclosure process violated the statute.

Wells Fargo was not required to obtain a court order before foreclosing on the Property.  See Stone v. Jetmar Props., LLC, 733 N.W.2d 480, 489 (Minn. Ct. App. 2007) (noting that, when "the foreclosure was conducted through foreclosure-by-advertisement procedures . . . there is apparently no judgment to attack") (citation omitted).  The Private Defendants' notice to Sain fully complied with Minnesota law, so Sain cannot claim that his due process rights were violated.

### d.    Conclusion

The Court dismisses this count for failure to state a claim because there is no allegation that the parties failed to follow the Minnesota foreclosure statute, which has been ruled to be constitutional.  There is no allegation of unconstitutional state action.  Additionally, with regard to the Private Defendants, there is no allegation that they acted as other than private actors, apart from the "in cahoots" statement.

### 3.    Sheriff's Sale on October 12, 2006

#### a.    Violation of Fourth Amendment

A seizure of property occurs when the government meaningfully interferes with a person's possessory interests in that property.  Robinette v. Jones, 476 F.3d 585, 593 (8th Cir. 2007).  "A Fourth Amendment violation occurs where a seizure is unreasonable under the circumstances."  Id. (citation omitted).

The Complaint establishes that the sheriff's sale took place on October 12, 2006.  However, Sain continued to occupy the property for ten more months.  The Government Defendants conclude that, because Sain remained in possession of the Property, the sheriff's sale did not implicate Plaintiffs' possessory interests and no seizure occurred.

Even assuming that the sale constituted a seizure, Sain has failed to state a

claim under the Fourth Amendment because he has not alleged facts indicating

that, in light of Defendants' compliance with constitutional Minnesota law, the

seizure was unreasonable.  Additionally, allegations related to the sheriff's sale

must be dismissed under the theory of quasi-judicial immunity, discussed below.

### b.    Fifth and Fourteenth Amendment Due Process

Sain asserts that the foreclosure proceeding violated his constitutional right

to due process under the Fifth Amendment.  His claim should actually be a claim

for deprivation of due process under the Fourteenth Amendment because the

defendants are local government officials.  <u>Warren v. Gov't Nat'l Mortgage</u>

<u>Ass'n</u>, 611 F.2d 1229, 1232 (8th Cir. 1980).

As previously noted, Minnesota's non-judicial foreclosure statute satisfies

due process.  Due process does not require a foreclosure hearing.  <u>Vail v. Brown</u>,

39 F.3d 208, 209 (8th Cir. 1994).  In this case, Sain was personally served with

notice of the foreclosure one month before the sheriff's sale.  The notice given was

sufficient to permit Sain to participate in the foreclosure sale and exercise his pre-

foreclosure options.  Sain admits he was also provided the six-month redemption

period.

Sain has failed to state a claim for the illegality or unconstitutionality of the

sheriff's sale.

### 4.    The August 17, 2007 Eviction

### a.    Eviction Process: Due Process Allegations

Sain also fails to state a violation of his due process rights based on the

eviction proceedings in state court.  The Government Defendants assert that

Wells Fargo complied with all statutory requirements in conducting its eviction

and Sain received proper due process.  In the eviction action, Wells Fargo named

Sain and his wife as defendants.  Thus, the eviction action was brought against all

persons who may have been in possession of the Property at that time.  A hearing

was scheduled and a process server served the Summons and Complaint on Sain

and his wife by leaving papers with Sain at the Property.  <u>See</u> Minn. Stat.

§ 504B.331(a).

Sain admits that he appeared at the hearing, and, after both parties had an

opportunity to speak, the judge determined that Sain did not raise an adequate

legal defense and held that Wells Fargo was entitled to possession of the

Property.  Because Sain would not voluntarily move from the Property, Wells

Fargo utilized a Writ of Recovery and used the sheriff's services to remove the

occupants from the Property.

Sain was afforded due process of law during the eviction process – he was provided notice of the hearing, appeared at the hearing, and presented his argument to the judge.  Thus, he was heard at a meaningful time and in a meaningful manner.  Sain fails to state a claim based on the eviction from the Property.  See Tymiak v. Omodt, 676 F.2d 306, 308 (8th Cir. 1982) (holding district court was correct to dismiss for failure to state a claim, complaint that eviction by property owner violated plaintiff's due process because "the Hennepin County state district court proceedings with respect to the . . . property clearly afforded [plaintiff] due process of law").

### b.      Quasi-Judicial Immunity

The Government Defendants are entitled to absolute quasi-judicial immunity for their actions taken with regard to Sain's eviction from the property. See Penn v. United States, 335 F.3d 786, 790 (8th Cir. 1982) (holding that law enforcement officers are entitled to absolute quasi-judicial immunity for following facially valid court order).  Absolute quasi-judicial immunity applies to public officials who are specifically required to act under a court order or at a judge's direction.  Id. at 789.   It specifically applies to a sheriff executing an eviction order.  Tymiak v. Omodt, 676 F.2d 306, 308 (8th Cir. 1982).

35

In this case, the Government Defendants are being sued for executing a facially valid order. The state court held a hearing, entered judgment against Sain, and issued a Writ of Recovery and Order to Vacate the Property. The Writ commanded Miller to remove Sain from the property and return it to Wells Fargo. Defendants merely carried out that ministerial task.

The Court dismisses the claim against the Government Defendants based on quasi-judicial immunity. It also dismisses any claims related to the sheriff's sale based on quasi-judicial immunity.

### c.   <u>Rooker-Feldman</u> Doctrine

The Government Defendants also assert that Sain is essentially challenging the eviction judgment entered against him in state court, so his claim is barred by the <u>Rooker-Feldman</u> doctrine.

"Under the <u>Rooker-Feldman</u> doctrine, lower federal courts lack jurisdiction to engage in appellate review of state court determinations. Although the state and federal claims may not be identical, impermissible appellate review may occur when a federal court is asked to entertain a claim that is 'inextricably intertwined' with the state court judgment." <u>In re Goetzman</u>, 91 F.3d 1173, 1177 (8th Cir. 1996) (citations omitted).

36

> [T]he federal claim is inextricably intertwined with the
> state-court judgment if the federal claim succeeds only to the extent
> that the state court wrongly decided the issues before it.  Where
> federal relief can only be predicated upon a conviction that the state
> court was wrong, it is difficult to conceive the federal proceeding as,
> in substance, anything other than a prohibited appeal of the
> state-court judgment.

Id. (citation omitted).

In Postma v. First Federal Savings & Loan of Sioux City, the Eighth Circuit affirmed the dismissal of federal lawsuit against the bank that foreclosed on the plaintiffs' property on the grounds that the plaintiffs' claims were "inextricably intertwined with the state court judgment" in that "their current claims can succeed only to the extent that the state court wrongly decided the foreclosure action."  74 F.3d 160, 162 (8th Cir. 1996).  The court explicitly rejected the plaintiffs' claims that the Rooker-Feldman doctrine did not apply because"they did not receive constitutionally adequate notice to cure or to mediate and thus were denied a fair opportunity to participate in the foreclosure proceedings in state court."  Id.

Here, Sain is suing in federal court for the injury caused by the state court judgment.  At its heart, Sain's claim is that he was wrongfully dispossessed of his property.  The only way for him to prevail on his federal suit is for the Court to

review and disagree with the judgment rendered by the state court evicting him from the Property.

The Court holds that the <u>Rooker-Feldman</u> doctrine provides another alternative ground for dismissing this claim.

### d.   Fourth Amendment

Seizures of property carried out as part of an eviction can implicate the Fourth Amendment.  <u>Soldal v. Cook County</u>, 506 U.S. 56, 61 (1992).  However, seizures of property carried out pursuant to a court order are almost always reasonable under the Fourth Amendment.  <u>Coleman v. Watt</u>, 40 F.3d 255, 263 (8th Cir. 1994).

In this case, Sain's Complaint does not plead – and, separately, under the summary judgment standard, the facts in the record cannot show – that the eviction in this case was unreasonable.  There is no allegation that the officers used excessive force, damaged property, or showed any kind of callous disregard for Sain's rights.  Sain admits that the officers asked Sain if he wanted to gather his belongings before he left.  The officers were acting pursuant to a valid court order.  In fact, solely examining Plaintiff's Complaint, Sain has made no allegations about the manner in which he was evicted.  Instead, his claim centers

on the fact that he *was* evicted.  However, as previously explained, he has failed to allege that the court order for the eviction was obtained unconstitutionally. The Court concludes that Sain fails to state a claim for violation of his Fourth Amendment rights based on the eviction.  In the alternative, based on the unrefuted evidence in the record, the Government Defendants are entitled to qualified immunity because there is no evidence that they violated a clearly established right in carrying out the eviction.

### e.      Conclusion

The Court holds that Sain has failed to state a claim for violation of the Fourth Amendment through seizure of his house.  He also fails to state a claim for violation of the Fifth Amendment through the eviction process.

### 5.      August 23, 2007 Stop

Sain alleges a series of Fourth and Fifth Amendment claims against "John Doe No. 1" in his First, Fourth, and Seventh cause of action, all arising out of an incident in which Sain alleges that a deputy gave Sain a trespassing citation after returning to the Property after he was evicted, placed handcuffs on Sain, impounded Sain's truck and garage door openers, and released him.  According to the unrefuted evidence submitted by the Government Defendants, John Doe

No. 1 is Deputy Aric Chaney and this incident occurred on August 23, 2007.

Chaney has not been named in this lawsuit or served with process.

### a.    Counts One and Seven: False Arrest Claims

Defendants argue these counts must be dismissed because Sain does not

allege that he was arrested.  (Compl. at 7.)  Instead, Chaney subjected him to an

investigatory-<u>Terry</u> stop by handcuffing and then releasing Sain.  (<u>Id.</u>)

> To justify a limited and momentary detention of a person
> without violating the Fourth Amendment's proscription against an
> unreasonable seizure, the police officer must be able to point to
> specific and articulable facts which, taken together with rational
> inferences from those facts, reasonably warrant that intrusion.
> Whether such a seizure is reasonable must be determined on the
> totality of the circumstances and is to be judged from the perspective
> of a reasonable officer on the scene without regard to the underlying
> intent or motivation.

<u>Andrews v. Fuoss</u>, 417 F.3d 813, 817 (8th Cir. 2005) (citations omitted).

Sain asserts, without citation to any evidence in the record, that Chaney

stopped him to check vehicle registration, violating a breach of the prohibition

against random car stops to check for violations.  <u>Delaware v. Prouse</u>, 440 U.S.

648, 663 (1979) (holding that "except in those situations in which there is at least

articulable and reasonable suspicion that a motorist is unlicensed or that an

automobile is not registered, or that either the vehicle or an occupant is otherwise

40

subject to seizure for violation of law, stopping an automobile and detaining the driver in order to check his driver's license and the registration of the automobile are unreasonable under the Fourth Amendment"). Sain also asserts that Chaney unconstitutionally demanded his identification. Sain continues that he was falsely imprisoned and asserts that a person who has been handcuffed has been subjected to the equivalent of an arrest.

Chaney's stop was not like the stop in <u>Delaware v. Prouse</u>, 440 U.S. 648 (1979). In <u>Prouse</u>, the officer had no particularized basis for the stop. <u>Id.</u> at 650-51. Here, even looking only at Sain's Complaint, he was stopped after he had gone back to the property after he was evicted and received a trespassing citation. According to Sain's allegation, the officer had probable cause to detain Sain for trespassing.

However, reviewing the claim under a summary judgment standard, the need for dismissal is even clearer. Chaney was responding to a burglary call in which Sain was the named suspect. Chaney then saw Sain driving away from the scene, in a vehicle with no license plates, which is a violation of Minnesota Statute § 169.79. Sain offers no admissible evidence to refute these facts. Chaney had an articulable and reasonable suspicion that Sain was subject to seizure for

violation of the law – and even had probable cause to arrest him.

The fact that Chaney demanded to see Sain's identification does not violate the constitution.  During a traffic stop, a peace officer can demand to see a driver's license.  Minn. Stat. § 171.08.  "[Q]uestions concerning a suspect's identity are a routine and accepted part of many Terry stops."  Hiibel v. Sixth Judicial Dist. Court of Nevada, Humboldt County, 542 U.S. 177, 186 (2004) (citations omitted).  See also United States v. Clayborn, 339 F.3d 700, 702 (8th Cir. 2003) (holding that, after stopping car based on lack of license plates, officer did not violate Fourth Amendment by requesting driver's license, insurance card, and registration).

The fact that Sain was handcuffed does not convert the Terry stop into an arrest.  "An investigative detention may turn into an arrest if it lasts for an unreasonably long time or if officers use unreasonable force.  During an investigative stop, officers should use the least intrusive means of detention and investigation reasonably necessary to achieve the purpose of the detention."  United States v. Martinez, 462 F.3d 903, 907 (8th Cir. 2006) (citations omitted).  "[U]se of handcuffs can be a reasonable precaution during a Terry stop to protect their safety and maintain the status quo."  Id. (citations omitted).  See also United

42

States v. Navarrete-Barron, 192 F.3d 786, 791 (8th Cir. 1999) (noting that "[s]everal

other circuits also have found that using handcuffs can be a reasonable

precaution during a Terry stop" and holding that use of handcuffs in case before

Eighth Circuit was reasonable component of Terry stop because of dangerous

nature of suspected crime of drug trafficking and reasonable basis to believe that

occupants of vehicle had weapon).

In this case, Chaney had reasonable and legitimate concerns for his safety.

Chaney was responding to a reported burglary in progress in which Sain was the

named suspect.  Sain was the subject of an officer safety alert because he had

made veiled threats to law enforcement.  Chaney knew that a shotgun had been

removed from Sain's residence, that Sain demonstrated an unwillingness to

recognized Chaney's authority when he declared himself sovereign from the

United States, and that he would impound Sain's car, which might cause Sain to

react adversely.  Chaney's decision to briefly handcuff Sain was a reasonable

safety precaution.  There is no evidence that Chaney delayed in issuing Sain the

citation, un-handcuffing him, and releasing him at the scene.

Because Sain does not actually plead that he was arrested or held for an

unreasonably long period of time, the Court holds that he has failed to plead a

claim for false arrest.  Even if the incident had qualified as an arrest, according to

Sain's Complaint, he was issued a trespassing citation after he had returned to

the Property after the eviction, so Sain has not pled a lack of probable cause for

arrest.  Alternatively, Defendants are entitled to summary judgment under

qualified immunity on this claim because, as explained, there is no evidence to

support a finding that Sain was unreasonably seized.  Moreover, even if the

handcuffing were viewed as an "arrest," the unrefuted evidence demonstrates

that, irrespective of state law, Chaney had probable cause to arrest Sain for traffic

violations such as lack of insurance and driving without license plates.  Rose v.

City of Mulberry, Arkansas, – F.3d –, 2008 WL 2668798, at *2 (8th Cir. July 09,

2008).

**b.     Count Four: Impounding of Sain's Vehicle**

"Impoundment of a vehicle for the safety of the property and the public is

a valid community caretaking function of the police, which does not require a

warrant."  United States v. Le, 474 F.3d 511, 514 (8th Cir. 2007) (citation omitted).

 "The impounding of a vehicle passes constitutional muster so long as the

decision to impound is guided by a standard policy – even a policy that provides

officers with discretion as to the proper course of action to take – and the decision

is made on the basis of something other than suspicion of evidence of criminal activity." Id. "So long as the officer's residual judgment is exercised based on legitimate concerns related to the purposes of an impoundment, his decision to impound a particular vehicle does not run afoul of the Constitution." United States v. Petty, 367 F.3d 1009, 1012 (8th Cir. 2004) (citation omitted).

Sain asserts that Chaney towed his vehicle without due process, but does not assert which due process rights he should have been afforded. Sain does not assert that Chaney impounded his vehicle as a pretext to search his car for evidence.

According to the evidence before the Court, Chaney stopped Sain, in part, because he failed to display license plates and, during the traffic stop, Sain admitted that he did not have insurance on his vehicle. Chaney impounded Sain's vehicle because it could not be lawfully operating on any public highway, street, or road in Minnesota without insurance. Pursuant to the Wright County Sheriff's Office written policy, Sheriff's Office deputies are authorized to tow uninsured vehicles. The Court concludes that Chaney's impoundment of Sain's vehicle was validly based on a standard policy and was reasonable under the circumstances. See also State v. Johnson, No. C2–01-2265, 2002 WL 31109546, at

45

*2 (Minn. Ct. App. Sept. 24, 2002) (unpublished) (holding officers are authorized to impound uninsured vehicles pursuant to standardized policy because "[i]t is a crime in Minnesota for an owner of a vehicle to operate the vehicle, or permit its operation on a public highway, knowing or having reason to know that the vehicle, is not insured in compliance with the Minnesota No-Fault Automobile Insurance Act") (citation omitted).

The Court also notes that the Constitution does not require a pre-deprivation hearing or notice before a vehicle is impounded.  Allen v. City of Kinloch, 763 F.2d 335, 336 (8th Cir. 1985).  As for post-deprivation procedures, "it is clear that a city can provide a less-than-prompt hearing, but only if the owner is permitted to regain the use of the impounded vehicle in the interim." Colemann v. Watt, 40 F.3d 255, 261 (8th Cir. 1994).  Here, under written Wright County procedures, Sain could retrieve his vehicle without any waiting period: he merely had to show the tow company that he owned the vehicle, that he had current insurance, and that he had license plates for the vehicle.  Also, under Minnesota law, Sain had a right to sue based on a claim that his vehicle should not have been impounded in the first place.  See Minn. Stat. § 169.041, subd. 7.

The Court grants summary judgment on Sain's due process claim related

46

to impoundment based on qualified immunity, because Chaney did not violate a clearly established right.

### c.     Count Four: Seizure of Sain's Garage Door Openers

"Inventory searches that are conducted according to standardized police procedures are reasonable."  United States v. Hall, 497 F.3d 846, 851 (8th Cir. 2007) (citation omitted).  "[P]olice may keep their eyes open for potentially incriminating items that they might discover in the course of an inventory search, as long as their sole purpose is not to investigate a crime.  Even if the officer suspects he might uncover evidence in a vehicle, the police can still tow[ ] a vehicle and inventory[ ] the contents, as long as the impoundment is otherwise valid."  Id. (citations omitted).  Here, if the inventory search was lawful, Chaney could lawfully seize evidence in plain view which he had probable cause to believe was evidence of a crime.  Maryland v. Buie, 494 U.S. 325, 330 (1990).

In this case, it was reasonable for Chaney to conduct an inventory search. The Wright County Sheriff's Office's written policy provides that all impounded vehicles will be inventoried in order to protect law enforcement from danger and false theft claims and to protect the owner's property.   As previously explained, the impoundment was valid.  While conducting the valid inventory search,

Chaney discovered garage door openers.  Chaney was investigating a trespassing complaint, Sain admittedly returned to the Property following his eviction, and he was stopped leaving the Property.  Garage door openers could have acted as electronic keys enabling Sain to enter the Property, so Chaney had probable cause to believe the garage door openers were evidence of the crime of trespassing. Thus, he was authorized to seize them.

The Court grants summary judgment on the due process claim related to seizure of the garage door openers based on qualified immunity, because Chaney did not violate a clearly established right.

### 6.      Trespass Incidence on September 13, 2007

On September 13, 2007, the Wright County Sheriff's Office was notified that Sain had unlawfully trespassed on the Property.  When Sain and Burke talked by telephone, Sain admitted he had gone back to the Property, so Burke mailed him a citation for trespassing.  Burke's only contact with Sain was over the telephone, so he did not seize him under the Fourth Amendment.  See United States v. Mendenhall, 446 U.S. 544, 553 (1980) ("[A] person is 'seized' only when, by means of physical force or a show of authority, his freedom of movement is restrained.  Only when such restraint is imposed is there any foundation

48

whatever for invoking constitutional safeguards.").

The Court holds that Sain has not stated a Fourth Amendment claim based on the September 13 trespass citation because there was no seizure alleged. Additionally, Sain has not stated a due process claim based on the citation because there is no allegation that Burke lacked probable cause to issue the citation.  In the alternative, the Court holds that Defendants are entitled to summary judgment on the due process claim based on the citation because, as previously analyzed, Burke had probable cause to issue the citation.   Defendants are entitled to summary judgment on the Fourth Amendment claim because there was no seizure.

## IV.    CONCLUSION

The Court dismisses all claims against the Private Defendants.  Count Three, the due process claim, is dismissed under Rule 12(b)(6) because there is no federal or state actor or actor acting under color of federal or state law and the Private Defendants complied with constitutional Minnesota law in the foreclosure process.  Count Five, the fraud claim, is dismissed with prejudice under Rule 12(b)(6) on the grounds that Sain fails to state a claim for fraud and, in his opposition explaining his fraud claim, he still does not state a viable claim

49

for fraud.  Additionally, Sain fails to plead fraud with specificity under Rule 9(b).

Count Six, the malicious prosecution claim, is dismissed under Rule 12(b)(6) on

the grounds that Sain fails to state a claim upon which relief can be granted,

particularly because Defendants prevailed in the eviction lawsuit.

The Court also dismisses all claims against the Government Defendants

with prejudice.  Count One, violation of the Fourth Amendment based on the

arrest of Plaintiff without warrant or probable cause, is dismissed under Rule

12(b)(6) because Sain does not actually plead that he was arrested or that the

officer lacked probable cause.  In the alternative, Defendants are entitled to

summary judgment on this claim based on qualified immunity.

Count Two, violation of the Fourth Amendment based on Sain's right to be

secure in his home and other effects, is dismissed for failure to state a claim, and,

in the alternative, is dismissed based on quasi-judicial immunity, or, in another

alternative, is dismissed based on the Rooker-Feldman doctrine.

Count Three, violation of due process, based on Sain's right to not be

deprived of property without due process of law, which is related to the

foreclosure and eviction, is dismissed for failure to state a claim.  Additionally,

this claim must be dismissed under the following alternatives: lack of jurisdiction

under the Rooker-Feldman doctrine and quasi-judicial immunity.

Count Four, violation of due process, by impounding Sain's truck and taking his garage door openers, is dismissed based on qualified immunity.

Count Five, fraud, is dismissed under Rule 12(b)(6) because Sain alleges no facts regarding fraud by the Government Defendants and, in his opposition, he does not state a viable fraud claim against the Government Defendants.

Count Six, malicious prosecution, is dismissed because, as to the civil eviction action, Sain did not prevail.  As to the issuance of citations, based on Sain's Complaint, the officers had probable cause to issue the citations and the claim is dismissed for failure to state a claim.  In the alternative, the claim is dismissed on summary judgment.

Count Seven, alleging false arrest and imprisonment, in violation of the Fourth Amendment, is dismissed under Rule 12(b)(6) because Sain does not actually plead that he was arrested or that the officer lacked probable cause. Alternatively, the Court grants summary judgment on this claim based on qualified immunity.

Overall, the Government Defendants are entitled to summary judgment based on qualified immunity on all of the constitutional claims against them.  The

sheriff's sale, the eviction, the August 23, 2007 trespass incident, and the

September 13, 2007 trespass incident all pass constitutional muster.  Based on the

unrefuted evidence, Defendants did not violate any clearly established right.

Also, as previously explained, Defendants' actions in all of these incidents were

objectively reasonable.

Accordingly, based upon the files, records, and proceedings herein, **IT IS**

**HEREBY ORDERED**:

1. The Motion to Dismiss by Defendants Wells Fargo Bank, N.A., James A. Geske, Curt Forte, and Countrywide Home Loans, Inc. [Docket No. 22] is **GRANTED**.

2. The Motion to Dismiss Pursuant to Rules 12(b)(6) and 56 by Defendants Gary L. Miller, Jim Koenig, and Paul Burke [Docket No. 28] is **GRANTED**.

3. The Complaint is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  July 16, 2008                    s / Michael J. Davis
                                         Michael J. Davis
                                         Chief Judge
                                         United States District Court

52